1999 ME 126

**STATE of Maine**

v.

**David RAYMOND.**

Supreme Judicial Court of Maine.

Submitted on Briefs June 17, 1999.

Decided Aug. 2, 1999.

Stephanie Anderson, District Attorney, Julia A. Sheridan, Asst. Dist. Atty., Portland, for the State.

Arthur A. Stilphen, Biddeford, for the defendant.

Before WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, and ALEXANDER, JJ.

CLIFFORD, J.

[¶ 1] David Raymond appeals from the judgments entered in the Superior Court (Cumberland County, *Crowley, J.*) following a jury trial in which he was found guilty of burglary of a motor vehicle (Class C) in violation of 17–A M.R.S.A. § 405 (Supp.1998), theft by unauthorized use of a motor vehicle (Class D) in violation of 17–A M.R.S.A. § 360(1)(A) (1983), and violation of a protective order (Class D) in violation of 5 M.R.S.A. § 4659(1) (Pamph. 1998). Raymond contends that the trial court erred by instructing the jury that proof of a defendant's intent to commit a theft by unauthorized use of a motor vehicle is sufficient to establish intent to commit a crime for purposes of the crime of burglary of a motor vehicle, and erred in denying his motion for a judgment of acquittal on the same grounds. Finding no error, we affirm.

[¶ 2] On April 12, 1998, after spending the evening with friends in Portland, Kris Leavitt returned to the Key Bank parking lot on Commercial Street, where she had parked her car, and discovered that her car was missing. The next morning, after learning that her car had not been towed, Leavitt reported the car stolen to the police. Leavitt contacted her former boyfriend, David Raymond, and informed him that her car had been stolen, Raymond told her that if she was "nice to him," he would show her where her car was parked. Raymond admitted to Leavitt that he took her car, then drove Leavitt to the Maine Medical Center parking garage where her car was located. Leavitt noticed that the driver's seat of the car and the mirrors had been adjusted. She also observed that

a copy of her protection from abuse order,[1] a gold necklace, and approximately $160 in cash and food stamps had been removed from her car.

[¶ 3] Raymond was charged with, and convicted of, burglary of a motor vehicle and theft by unauthorized use of a motor vehicle, both charges stemming from the taking of Leavitt's vehicle and some of its contents, and the later parking of the vehicle at a different lot.[2] This appeal followed.

[¶ 4] Title 17–A M.R.S.A. § 405(1) provides:

A person is guilty of burglary of a motor vehicle if the actor enters a motor vehicle, knowing that the actor is not licensed or privileged to do so, with the intent to commit a crime therein.

[¶ 5] Title 17–A M.R.S.A. § 360(1)(A) provides:

A person is guilty of theft if . . . [k]nowing that he does not have the consent of the owner, he takes, operates or exercises control over a vehicle, or, knowing that a vehicle has been so wrongfully obtained, he rides in such vehicle[.]

A violation of section 405 is a Class C crime, *see* 17–A M.R.S.A. § 405(2), while a violation of section 360(1)(A) is a Class D crime, *see* 17–A M.R.S.A. § 362(4) (Supp. 1998). The trial court proceeded on the theory that a person can be guilty of burglary of a motor vehicle if the State can prove that the person entered the motor vehicle, knowing that he or she was not licensed to do so, with the intent to act in violation of section 360(1)(A), that is, with the intent to commit theft of the vehicle. In his motion to dismiss the charge of burglary of a motor vehicle, his objection to the jury instructions, his later motion for a judgment of acquittal as to the charge of burglary of a motor vehicle, and now on appeal, Raymond contends that the Legislature did not intend to permit the State to prove the offense of burglary of a motor vehicle by proving an intent to commit the joyriding activity described in section 360(1)(A), otherwise, he argues, a defendant could be charged with a Class C crime and a Class D crime based on the same activity.

[¶ 6] The interpretation of a statute is a question of law subject to de novo review. *See Koch Refining Co. v. State Tax Assessor*, 1999 ME 35, ¶ 4, 724 A.2d 1251, 1252–53. To construe the language of a statute, we look to the plain meaning of the language to give effect to legislative intent. *See id.* In so doing, we "consider the whole statutory scheme for which the section at issue forms a part so that a harmonious result, presumably the intent of the Legislature, may be achieved." *Id.* (quoting *Estate of Whittier*, 681 A.2d 1, 2 (Me.1996)). There is nothing in the language of section 405 to limit theft by unauthorized use of the motor vehicle from being considered a crime committed within the vehicle for purposes of the crime of burglary of a motor vehicle. The section refers broadly to crime, without limiting its application to specific crimes. The legislative history of section 405 supports this conclusion.

[¶ 7] Section 405 was enacted in 1989 and resulted from of a Committee Amendment to proposed legislation. The proposed legislation, to add subsection D to subsection 3 of section 362, which defines thefts that constitute Class C crimes, and provided:

---

1. Raymond and Leavitt had a four and a half year relationship, during which they had a child. Not long after the relationship ended, Raymond went to Leavitt's house and took their daughter without permission, returning her three days later. This event prompted Leavitt to seek and receive a protective order against Raymond from the District Court.

2. The trial court sentenced Raymond to six months in jail, with all but fourteen days suspended, and placed him on a one year probation period. The sentence is concurrent as to all three charges.

D. The theft is from a locked vehicle and the value of the property does not exceed $5,000.

(1) It shall be prima facie evidence that a vehicle was locked at the time of the theft if the vehicle is damaged in a manner consistent with a forced entry.

(2) "Vehicle" for purposes of this subsection has the same meaning as in Title 29, section 1, subsection 20.

(3) All other thefts from motor vehicles shall be classified according to the value of the property involved.

L.D. 688 (114th Legis.1989). The Committee Amendment to the bill struck this proposal and included the current language of section 405.[3] *See* Comm. Amend. A to L.D. 688, No. H–267 (114th Legis.1989). The Statement of Fact accompanying the Committee Amendment states,

> This amendment, rather than defining the crime as theft from a motor vehicle, creates the crime of burglary of a motor vehicle. A person commits the crime of burglary of a motor vehicle by illegally entering a motor vehicle with the intent to commit a crime in the motor vehicle. *The intended crime can be any crime, but probably the most common crimes will be various theft offenses.*

Comm. Amend. A to L.D. 688, No. H–267, Statement of Fact (114th Legis.1989) (emphasis added). This Statement of Fact, particularly the phrase stating that "[t]he intended crime can be any crime," suggests that a violation of section 360(1)(A) can be used as a basis of proving burglary of a motor vehicle.

[¶ 8] Furthermore, section 13 of the criminal statutes contemplates that there may be more than one crime with which a defendant could be charged arising out of the same activity. *See* 17–A M.R.S.A. § 13(1) (1983). Section 13 provides,

> The existence of a crime other than the one charged, but based on the same conduct or arising from the same criminal episode, for which a person may be prosecuted, whether that crime is a lesser or greater crime as to elements or sentencing classification, shall not preclude prosecution for the offense charged unless a contrary legislative intent plainly appears.

No contrary legislative intent is apparent here.

[¶ 9] Raymond contends that despite this legislative history, the Legislature could not have intended to make theft by unauthorized use of a motor vehicle a basis for proving burglary of a motor vehicle because every violation of section 360(1)(A) would necessarily result in a violation of section 405, creating a redundancy within the criminal statutes. We disagree. A violation of section 360(1)(A) does not necessarily result in a violation of section 405. A person can enter a vehicle with the owner's consent, but then take the vehicle for an extended drive that the owner did not authorize and violate section 360(1)(A), while not violating section 405. Although a violation of section 360(1)(A) will often follow a violation of section 405, that will not always be the case. If a criminal activity does violate both sections, however, the statutes do not prohibit the State from charging the accused with both crimes arising from the same activity. *See* 17–A M.R.S.A. §§ 13, 405. The decision to prosecute an accused for one or both crimes lies within the discretion of the prosecutor.

The entry is:

Judgments affirmed.

---

**3.** Section 360(1)(A), as it currently reads, was enacted in 1975 and thus existed when section 405 was enacted. *See* P.L.1975, ch. 499, § 1; ch. 740, §§ 56, 57. Furthermore, section 362(4)(A), which specifically refers to a violation of section 360(1)(A) as a Class D crime, also existed when the original bill inserting an additional subsection into section 362 was proposed.